In Equity.

THOMAS J. LYNCH, Trustee,

*vs.*

SOUTH CONGREGATIONAL PARISH of Augusta, et als.

Kennebec.   Opinion March 5, 1912.

*Wills.   Charities.   Construction of Will.   Lapse of Legacy.   Burden of Proof.   Cy Pres Doctrine.*

A testator devised the residuum of his estate in trust. He directed the trustees to pay the income of the trust fund to certain beneficiaries during life, and directed that the trust fund be paid in equal proportions of one third each to the South Congregational Society of Augusta, the Hallowell Classical and Scientific Academy of Hallowell, and the Bangor Theological Seminary of Bangor. The South Congregational Parish of Augusta is the business organization of the South Congregational Society. The gift to the Hallowell Academy has failed through the inability of that institution to take the fund and devote it to the purposes intended. The heirs of the testator claim this one third of the fund on the ground that the Hallowell Academy became defunct in the lifetime of the testator, and that therefore the legacy to it lapsed. The South Congregational Parish of Augusta and the Bangor Theological Seminary of Bangor claim this part of the fund on the doctrine of *cy pres*.

Upon a bill by the trustee for instructions, it is held:—that the burden is upon the heirs to show that the legacy to the Hallowell Academy lapsed in the lifetime of the testator, and that the case, as presented to the court, does not show it: that the doctrine of *cy pres* is recognized in this state: that the doctrine of *cy pres* is applicable to the bequest to the Hallowell Academy: that to apportion the Hallowell Academy legacy equally between the South Congregational Parish of Augusta and the Bangor Theological Seminary will be to carry out *cy pres* the testator's intentions.

And the trustee is instructed,

1. That the South Congregational Parish of Augusta, by its Prudential Committee, is entitled to receive that portion of the residuary trust fund which was bequeathed to the South Congregational Society of Augusta, to be used and expended as provided in the will.

2. That one half of the fund originally bequeathed to the Hallowell Classical Academy be paid by the trustee to the Bangor Theological Seminary for the educational uses and purposes of that institution.

3. That the remaining half of the fund originally bequeathed to the Hallowell Classical and Scientific Academy be paid by the trustee to the South Congregational Parish of Augusta to be used, appropriated and expended by it for the benefit of Congregational educational institutions, with the consent and approval of the Maine State Congregational Conference.

4. *"Cy pres"* is a judicial rule of construction applied to a will by which, when the testator evinces a general charitable intention to be carried into effect in a particular mode which cannot be followed, the words shall be so construed as to give effect to the general intention. It is applied only to valid charitable gifts.

In equity. On report. Decree according to opinion.

Bill in equity brought by the plaintiff as trustee under the will of John Barrows, late of Augusta, deceased, asking for instructions. Answers were filed. All allegations in bill and answers were admitted to be true, and the case reported to the Law Court for determination.

The case is stated in the opinion.

*M. S. Holway,* for plaintiff.

*J. W. Spaulding, John B. Madore, F. G. Farrington, and C. L. Andrews,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, J. This is a bill in equity brought by a trustee under a will, asking the instructions of the court. All the allegations in the bill and answers are admitted to be true.

The plaintiff is trustee under the will of John Barrows, late of Augusta, deceased. Mr. Barrows made his will November 12, 1885. He made three codicils to the will, dated respectively, January 8, 1886, December 15, 1886, and November 12, 1888. He died November 15, 1888. The will was duly allowed. The contents of the codicils are not material to this case.

After having made various testamentary provisions for his wife, sister and others, the testator, by the sixth paragraph of the will,

devised all the rest and residue of his estate to trustees, of whom the plaintiff is the successor in the trust. The will provided that the trustees should use, appropriate and pay the income of the trust fund to and for the sole use of the testator's adopted son, Greenleaf Barrows, during his natural life, and in case Greenleaf Barrows should die before the decease of the testator's wife, the trustees were directed to use, appropriate and pay the income to her during her life. Then followed the provision which we are now to consider. It is in these words:—"I then direct that said trust fund and estate remaining in the hands of said trustees shall be conveyed, transferred and paid over in equal proportions of one third part each, to the South Congregational Society of Augusta; the Hallowell Classical and Scientific Academy of Hallowell, and the Bangor Theological Seminary, of Bangor, Maine, to have and to hold the same in the proportions aforesaid, severally to said respective devisees forever, divested of said trust. The proportion which shall be received by said South Congregational Society to be used, expended and appropriated for charitable and benevolent purposes in such manner as that society, with the consent and approval of the Maine State Congregational Conference shall deem expedient and proper. And the said respective portions which shall be received by said Classical and Scientific Academy and said Theological Seminary to be used and expended for the uses and purposes of each of said institutions."

Greenleaf Barrows is deceased, and although not directly alleged in the bill, it is assumed in argument that the testator's widow is deceased also.

The parties defendant are the South Congregational Parish of Augusta, which is the business organization of the South Congregational Society, the Bangor Theological Seminary, the Hallowell Classical and Scientific Academy, and the heirs of John Barrows, all of whom have appeared and answered.

The Hallowell Classical and Scientific Academy discontinued its school in June, 1888, and the property of the school has been sold. It has no funds, and it has entirely and permanently ceased to carry on the work of maintaining a school or any other activity. The corporation has never been dissolved, but in its answer it admits that it has no expectation of continuing a school according to its charter, and that it makes no claim upon the fund, and is willing

that the same should be disposed of in such manner as may be found suitable by the court. Therefore it is conceded by all that the gift to this institution has failed through its inability to take the same and devote it to the purposes intended.

The South Congregational Parish of Augusta in its answer claims the gift made to the South Congregational Society of Augusta, and, also, that the share originally given to the Hallowell Classical and Scientific Academy should be paid to itself, to be used according to the purposes designated in the gift of its own one third, and in such manner as it may deem expedient and proper with the consent and approval of the Maine State Congregational Conference. And it makes this claim on the ground that such a disposal would be as nearly as possible like that which was intended by the testator.

The Bangor Theological Seminary, upon the same ground, claims in its answer that the Hallowell institution's share should be paid to itself to be used according to the object and purposes for which it was incorporated.

The heirs claim that the legacy in behalf of the Hallowell Classical and Scientific Academy has lapsed, and that the share originally given to that institution should now be distributed to the heirs of John Barrows or their representatives.

This claim of the heirs that the legacy lapsed in the lifetime of the testator may properly be considered first. In the case of common personal bequests, if the legatee, not a relative of the testator, dies before the decease of the testator, the legacy lapses. And this principle applies to charitable bequests to institutions or organizations. If the institution or organization becomes extinct in the lifetime of the testator, the legacy lapses. *Merrill* v. *Hayden,* 86 Maine, 134; *Jackson* v. *Phillips,* 14 Allen, 539; *Fish* v. *Atty. Gen'l,* L. R. 4 Eq., 521. This rule, however, does not apply if the institution comes to an end after the testator's death, but before the legacy is payable. In re Slevin, 2 Chancery Div. (1891) 236.

It is earnestly contended for the heirs that the allegations in the bill and answer of the Academy, admitted to be true, show that it had discontinued its school in June 1888, five months before the testator's death, that it had sold the school property, had no funds, had entirely and permanently ceased to carry on its educational work, and had no expectation of continuing a school according to

the terms of its charter. From these premises it is argued that although the Academy corporation had not been legally dissolved, it had ceased all practical existence before November 1888; that it was practically dissolved, so far as the testator's bequest to it is concerned. But the allegations in the bill and answer do not fully support the claim as stated. All of the allegations, except that relating to the discontinuance of the school, are in the present tense. We do not think we are warranted in assuming, in the absence of more specific evidence, that the Hallowell Classical and Scientific Academy was defunct as an institution, or that it had entirely and permanently abandoned its corporate existence, and the work it was chartered to do, prior to the testator's death. We have only the fact that the school was discontinued in June 1888. In truth it has not been reopened. But whether in the interim between June and November, the management had hopes, expectations and purposes, since frustrated or abandoned, we do not know. We think the burden is on the heirs to show it. The case of *Stone* v. *Framingham,* 109 Mass., 303, on which the heirs chiefly rely as a precedent, is unlike this one. In that case, the legislature had deprived the Academy, irrevocably, of all its property, and had taken away the power of performing the principal duties which devolved upon it. And it was properly enough held that the institution was practically dissolved, so far as it affected the right to retain a trust fund which had been given to its use.'

We hold that the legacy did not lapse for the reason above stated.

The Hallowell Classical and Scientific Academy having become unable to execute the trust, and having declined the same, the South Congregational Parish and the Bangor Theological Seminary claim the fund upon the equitable doctrine of *cy pres* and the only debatable questions presented are whether, in accordance with that doctrine, the share of the Academy shall be paid wholly to the Parish, or wholly to the Seminary, or divided between them, or whether it shall descend to the heirs as an undevised portion of the residuum.

In order to answer these questions correctly, it is necessary to examine further the character and purposes of all three of the original beneficiaries.

The Hallowell Classical and Scientific Academy was chartered in 1872 "for the purpose of promoting Christian education, and the

more thorough training of the youth in such languages and in such of the arts and sciences as the trustees" should direct. At the date of the will, and until June 1888, it conducted a school at Hallowell for the education of youth of both sexes, of the grade and scope of high schools. It was a boarding as well as a day school. Its Board of Trustees and management, some of them clergymen, were affiliated with the Congregational denomination in this State. The school was devoted to the higher education of young men and women under the influence of the principles and doctrines of the Congregational denomination.

The South Congregational Society of Augusta was then and is now a religious and charitable organization located at Augusta, belonging to the Congregational denomination, its management being vested in a board of officers called the Prudential Committee. Its parish is accustomed to distribute part of its gifts to charity among educational institutions "such as the Congregational Educational Society and the American Missionary Association, organizations affiliated with the Congregational denomination;" and the funds given in this way "are used for the benefit of schools in the western and the southern parts of the United States."

The Bangor Theological Seminary, originally the Maine Charity School, was incorporated in 1814, "for the purpose of promoting religion and piety, and for the education of youth in such languages and in such of the liberal arts and sciences as the trustees thereof shall from time to time judge the most useful and expedient for the purposes of said Seminary." It is authorized to confer the degree of doctor of divinity. As stated in the bill, it was and is an institution located at Bangor, of a charitable nature. Its principal object is to educate young men as ministers of the Congregational denomination. As stated in the stipulations of the parties, it is practically a theological seminary for the fitting of young men for the Congregational ministry.

John Barrows was, in his lifetime, a devout member of the Congregational denomination, and a member of the South Congregational Society of Augusta.

The doctrine of *cy pres* has been fully and learnedly discussed in recent times in the opinions of this court in *Whalen* v. *Doyle,* 87 Maine, 426, and *Brooks* v. *Belfast,* 90 Maine, 318. See also the exhaustive opinion in *Jackson* v. *Phillips,* 14 Allen, 539. It is

unnecessary now to do more than to restate two or three principles. *Cy pres* is a judicial rule of construction applied to a will by which, when the testator evinces a general charitable intention to be carried into effect in a particular mode which cannot be followed, the words shall be so construed as to give effect to the general intention. It is applied only to valid charitable gifts.    Bouvier Dict. Title, *Cy pres,* Story Eq. Juris. sect. 1167.    If charity be the general charitable intention, though the mode provided for its execution fails, and thereby the donor's general purpose will be impaired or destroyed, the court in equity will find some means of effectuating the intention of the donor, as nearly as possible.    *Jackson* v. *Phillips,* supra.    To apply the doctrine, the court must be satisfied that some other object may be found answering the intention of the donor in a reasonable degree, and most nearly consonant to the donor's general charitable purpose.    *Atty. Gen.* v. *Briggs,* 164 Mass., 561, *Jackson* v. *Phillips,* supra.    *Atty. Gen.* v. *Whiteley,* 11 Ves. Jr., 241.    And to determine the donor's general intention, the court may look at all of the charitable bequests in the will.    *Atty. Gen.* v. *Iron Mongers Co.,* 10 Clark & Finnelly, 908.

No citation of authorities is necessary to show that the legacy to the Hallowell Classical and Scientific Academy was a valid charitable gift.    And read in the light of existing conditions, we think it evinces a general charitable intention.    In this respect it is unlike the gifts in *Brooks* v. *Belfast,* 90 Maine, 318, and *Doyle* v. *Whalen,* 87 Maine, 426, cited in argument.

We think it is evident that the testator having made such provision for his widow and for such other persons and objects as he saw fit, intended to devote the remainder of his estate to charity. He was a Congregationalist.    He desired his charity to be administered and expended under the auspices, or for the uses, of Congregational institutions, church and schools.    Two thirds of the trust fund he wished should be expended to promote education in Congregationalist schools of different grades.    He evidently wished to confirm the polity and extend the usefulness of the Congregational denomination by aiding schools under the management and control of men of that faith.

He gave one third of the fund to the Congregational Society of which he was a member, to be expended for such charitable and benevolent purposes as might be approved by the State Congrega-

tional Conference. And no question is raised here about the right of that society, through its parish, to receive and apply that bequest.

It is agreed that the South Congregational Society of Augusta is a charitable organization, and that customarily it devotes a part of its charitable gifts to educational institutions, affiliated with the Congregational denomination. It is agreed also that the Bangor Theological School is a divinity school of the same denomination.

The charity given to the Hallowell Classical and Scientific Academy was intended primarily for educational purposes, and secondarily, we think, to strengthen Congregationalism. And we conclude that to entrust the administering of this fund, or at least a part of it, to the Bangor Theological Seminary, a Congregational, educational institution in this state, though of a higher grade than the Hallowell Classical and Scientific Academy, would be to carry out *cy pres* the testator's intentions.

But although the Bangor Theological Seminary in its answer claimed the whole of the Academy share, and the Congregational Parish did the same, yet at the argument before us, they were represented by the same counsel; and, for them, he suggests that a division between the Seminary and the Parish "seems to be a fair interpretation of the probable intention of the testator." With this view we concur. No school of the Congregational denomination similar to the Hallowell school has applied for the fund, and it does not appear that the testator could have had any other in mind. But it does appear that his intention was that the three institutions should receive the entire residuum of his estate in equal shares. There is nothing to show that he preferred the Seminary to the church. He regarded them alike, and to the same degree. The legacy given to the Academy for educational uses can be applied by the church organization to similar uses through its customary channels of charitable beneficence. In this connection it should be said that no objection is made on the ground that the objects of the church society's charity are indefinite.

Accordingly the plaintiff trustee is instructed,—

I. That the South Congregational Parish of Augusta, by its Prudential Committee, is entitled to receive that portion of the residuary trust fund which was bequeathed to the South Congregational Society of Augusta, to be used and expended as provided in the will.

2.   That one half of the fund originally bequeathed to the Hallowell Classical and Scientific Academy be paid by the trustee to the Bangor Theological Seminary for the educational uses and purposes of that institution.

3.   That the remaining half of the fund originally bequeathed to the Hallowell Classical and Scientific Academy be paid by the trustee to the South Congregational Parish of Augusta to be used, appropriated and expended by it for the benefit of Congregational, educational institutions, with the consent and approval of the Maine State Congregational Conference.

A decree accordingly will be entered below.

*So ordered.*